IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CHARLES E. LINDER, | CASE NO. 1:20-cv-01667-SO |
| Petitioner, | DISTRICT JUDGE SOLOMON OLIVER, JR. |
| vs. | |
| WARDEN EDWARD SHELDON, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Charles E. Linder filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Linder is currently in custody at the Richland Correctional Institution serving a 13-year sentence imposed by the Cuyahoga County Court of Common Pleas in *State v. Linder*, Case No. CR-17-616950-A. This matter has been referred to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that Linder's petition be denied.

## Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by the state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Eighth Appellate District summarized the facts of Linder's underlying conviction as follows:

> On [March 4, 2017], the victim, [Kimyata] Luckey, was at her friend, Erica Caryle's ("Caryle") apartment that was owned by the Cuyahoga Metropolitan Housing Authority ("CMHA"). Linder came to the residence and went to sleep.
>
> Luckey testified that after Linder went to sleep, Caryle decided to steal PCP from him. Luckey told Caryle she wanted nothing to do with the plan; Caryle, however, stole the drugs from Linder. Luckey testified that Caryle acted on her own.
>
> A few minutes later, Linder woke up and confronted the women about his missing drugs; both denied knowing anything about it. Luckey testified that Linder then attacked her, first punching her several times on the head, followed by beating her in the head with a pistol. After several blows to the head, Luckey fell unconscious—the last thing she remembered was being inside the apartment. Her next memory was 15 days later, when she woke up in a hospital.

*State v. Linder*, No. 10660, 2018-Ohio-3951, at *2, ¶ 11–13 (8th Dist. Cuyahoga Sept. 27, 2018).

### Procedural history

*Trial court proceedings*

Through the course of the police investigation, assigned Detective Aaron Reese of the Cleveland Police Department developed Linder as the suspected perpetrator of the assault against Kimyata Luckey. Doc. 10-2, at 45. Detective Reese obtained a warrant for Linder's arrest, Doc. 10-1, at 13 (Ex. 4), and reached out to Linder for a statement, Doc. 10-2, at 45–46. On March 29, 2017,

2

Linder "turned himself in" to the Cleveland Police Department and was "placed in a room" with Detective Reese. *Id*. Linder waived his *Miranda* rights and made inculpatory statements to Detective Reese that Detective Reese recorded via a body-worn camera. *Id*. On March 31, 2017, Linder was arrested. *State v. Linder*, 2018-Ohio-3951, at *1, ¶2; Doc. 10-2, at 35.

In mid-April 2017, a Cuyahoga County grand jury indicted Linder on one count of attempted murder, two counts of felonious assault, one count of kidnapping, and one count of having weapons while under disability.[1] Doc. 10-1, at 4 (Ex. 1). The grand jury also charged one- and three-year firearms specifications[2] related to the attempted murder, assault, and kidnapping charges, accusing Linder of having a firearm on or about his person during the commission of those alleged offenses. *Id*. In late April 2017, Linder was arraigned on the indictment. Doc. 10-1, at 7 (Ex. 2). He pleaded not guilty and the case was adjourned. *Id*.

In late September 2017, Linder filed a motion to suppress his March 29, 2017 statements to Detective Reese. Doc. 10-1, at 8–11 (Ex. 3). The state filed a brief in opposition. Doc. 10-1, at 12–17 (Ex. 4). One week later, in

---

[1]    There are multiple disabling conditions contemplated by Ohio Revised Code § 2923.13 which prohibit an individual from acquiring, having, carrying, or using a firearm unless and until he or she is relieved from disability. In the instant case, Linder's disability was due to his being previously convicted of a crime. See Doc. 10-4, at 178, 184; Doc. 10-5, at 132.

[2]    Firearms specifications mandate enhanced sentencing on conviction for an individual found to have possessed a firearm during the commission of the attached crime. Ohio Rev. Code §§ 2941.141(A), 2941.145(A).

October 2017, Linder filed a *pro se* motion to dismiss the indictment on speedy trial grounds. Doc. 10-1, at 19–22 (Ex. 6). The state also filed a brief in opposition to that motion. Doc. 10-1, at 24–30 (Ex. 7).

On October 10, 2017, during its morning session, the trial court held a hearing on Linder's motion to dismiss. Doc. 10-2, at 30–37. The court also heard from the parties on Linder's suppression motion and took testimony from Detective Reese. Doc. 10-2, at 38–68. Following these hearings, the trial court denied both the motion to dismiss, Doc. 10-1, at 32 (Ex. 8), and the motion to suppress evidence, Doc. 10-2, at 18 (Ex. 5). Trial began later that day after lunch. Doc. 10-1, at 71.

The Ohio Court of Appeals for the Eighth Appellate District summarized the six-day proceeding as follows:

> The state presented the testimony of another resident from the CMHA complex, Mariah Montanez ("Montanez"), to help fill in the gaps. Montanez, a resident on the first-floor, testified that she came out of her apartment after hearing loud noises from the hallway. She heard a woman yelling "get off of me," and a man responding, "you should have never stole from me." Although Montanez initially testified that she did not see the man, she later admitted that she did see him, and it was Linder. Montanez testified that she saw Linder shaking the woman, and then drop her, head first, from the second floor to the first floor. There was another woman with Linder, and she was yelling "just take her down, beat her ass, kill her." Montanez called the police and was interviewed by them on the scene when they arrived.
>
> Both Cleveland and CMHA police responded to the scene. The officers testified to finding Luckey unconscious, bleeding from her head and nose in the

4

complex's courtyard. One of the officers found a spent shell casing next to her head. The officer also found a blood trail that led from inside the stairwell to the third floor. Luckey was transported to the hospital by ambulance; her identity, however, was initially unknown.

The emergency room physician who treated Luckey testified. Luckey arrived at the hospital unresponsive and was labeled as a "category 1" patient, which is the "highest concern level for a patient's care." Her injuries were life threatening. She immediately required resuscitation. She was then placed on a ventilator and put in a medically-induced coma to keep her breathing appropriate.

Luckey's mother testified about her recovery after the incident, which involved her having to relearn how to walk and talk, and how it has negatively affected Luckey mentally.

Linder's former girlfriend and the mother of two of his children, Tanisha Stone ("Stone"), testified; she was a reluctant witness who appeared pursuant to a bench warrant. According to Stone, she spoke with Linder after the incident and he told her that he "did something bad." Specifically, Linder told her that he was getting high with Luckey and Caryle and his money "came up missing" after he fell asleep. He believed Luckey had it, so he hit her, dragged her down the stairs, and shot off a gun.

Detective Reese testified at trial that he went to the CMHA complex to attempt to locate witnesses to the incident. While there, he noticed an apartment with the door open and a television on at a high volume. The detective asked CMHA officials to do a welfare check of the apartment. Reese learned that the apartment had belonged to Caryle, who, at that time, was jailed on an unrelated matter. After obtaining consent from Caryle, the detective searched the apartment and saw what he suspected to be blood in it. He also found an identification card belonging to Luckey, and that was how her identity

was discovered, and thereafter, her family was notified.

The detective also testified at trial about his interview with Linder. During the interview, Linder admitted that he was at Caryle's apartment at the time in question and stated that he was just trying to get his money back. Linder also told the detective that Luckey attacked him. While outside, an unknown man saw Luckey attacking Linder and came to Linder's aid; the unknown man was the person who beat Luckey. Linder gave two different possible names for the unknown man. Linder gave inconsistent statements about who fired a gun — at one juncture saying he did, and at another saying the unknown man did. Detective Reese admitted that he engaged in tactics such as lying to and leading Linder during the interview.

The detective also admitted that Caryle told him that another person was there. Other than Linder's and Caryle's statements that another person was there, Detective Reese could never obtain any other corroborating evidence. The detective also testified though that he felt like Caryle was "playing games" with him.

Detective Reese testified that swabs of blood were taken from the scene, but admitted that they were not tested. The shell casing removed from where Luckey was found was also not tested. According to the detective, the testing was not necessary because his investigation demonstrated that Linder was the perpetrator.

As mentioned, after the state rested its case and the defense's motion for a Crim.R. 29 judgment of acquittal was denied, Linder testified. According to Linder, he went to Caryle's apartment on the date in question to get high; once there, he and Caryle smoked PCP. He and Caryle were the only two in the apartment at the time. After smoking the drugs, Linder fell asleep.

Linder testified that he woke up because Caryle was tapping his leg. As was his custom, Linder checked his pocket for his money and discovered that his wallet, that he had had in his back pocket, was in his front pocket. According to Linder he had cashed his social security check and "got money off his card" prior to going to Caryle's apartment. Upon looking through his wallet, Linder discovered that the approximately $800 he had was gone. He also discovered that his drugs, which he had in another pocket, were missing. Linder asked Caryle where his money was, and she looked at Luckey, who was now at the apartment.

Luckey denied having Linder's money, however, and "jumped up" from the chair she was sitting in. When she jumped up, Linder saw what he believed was his money and drugs in her pocket. He "grabbed" his money and drugs out of Luckey's pocket, and Luckey started hitting him. Caryle told them to leave, so Linder walked outside, but Luckey continued to "hold on" to him; he was "trying to get away from her."

Once outside, Linder continued to try to "get loose from" Luckey. Eventually, Linder "yanked away from her and she fell." Meanwhile, Caryle was yelling at Luckey that she got what she deserved for stealing from Linder. At the same time, one of Linder's friends, "Joseph," happened on the scene. Upon hearing Caryle's claim that Luckey had stole from Linder, the friend entered the fray and started "beating [Luckey] with his hands" and "stomping" on her. Linder told the man "stop it. Man, I'm cool. I got my money back. You know, everything cool, leave her alone ***." Linder denied firing a gun.

Linder testified that he then returned to Caryle's apartment to get his belongings. While in the apartment, he saw that the police had arrived and were by Luckey. Upon leaving the apartment, he saw "Joseph" and asked him for a ride. The two walked by the police—one of the officer[s] was holding Luckey up and her eyes were open—and

7

Linder asked the officer if Luckey was all right, but got no response. So Linder just left the scene.

Linder also testified about his interview with Detective Reese. Linder testified that he had to get his "nerve up" to go see the detective so he could tell him who had beat Luckey. On the day he went to see Detective Reese, he was intoxicated and forgot the name of the man ("Joseph") who had done this. Linder testified that he was rattled by the detective from the start: the detective met him in the police station parking lot, and told Linder he remembered him as a former gang member who "baked PCP."

Linder testified that another man was in the interview room and he did not know why that man did not appear on the video of the interview. Linder further testified that he asked for an attorney right away, but Detective Reese told him "this is not a video-recorded *** interrogation."

According to Linder, he could not remember much from the interview because he was high. Detective Reese was "putting things in his head and making him believe these things occurred." Linder told the jury that he believed the detective "had something against him."

The state called Detective Reese on rebuttal. The detective testified that Linder was not high on PCP at the time of the interview, as he would have been able to smell it even if Linder had taken a shower or put cologne on.

*State v. Linder*, No. 10660, 2018-Ohio-3951, at *2–5, ¶ 14–31.

On October 16, 2017, the jury returned a verdict finding Linder guilty of attempted murder with a firearm specification, two counts of felonious assault with a firearm specification, kidnapping with a firearm specification, and

having weapons while under disability. Doc. 10-1, at 33 (Ex. 9); Doc. 10-1, at 34-46 (Ex. 10); Doc. 10-5, at 176–182.

On November 14, 2017, the trial court decided that the felonious assault counts were "allied offenses of similar import" to the attempted murder, so Linder could be convicted of only one. Doc. 10-1, at 47 (Ex. 11); *see* Ohio Rev. Code Ann. §2941.25. The state elected to proceed on the attempted murder charge. Doc. 10-1, at 47 (Ex. 11).

The trial court sentenced Linder to ten years on the attempted murder charge plus three years for the firearm specification, ten years on the kidnapping charge plus three years for the firearm specification, and 36 months for having weapons while under disability. Doc. 10-1, at 47 (Ex. 11). The court ordered that Linder would serve his sentences concurrently for an aggregate 13-year term.[3] Doc. 10-1, at 47 (Ex. 11).

*Direct appeal*

Linder appealed to the Eighth District Court of Appeals in Cuyahoga County, Ohio. Doc. 10-1, at 57–102 (Ex. 13). In his brief, appellate attorney Joseph V. Pagano raised the following assignments of error on Linder's behalf:

I.      Trial counsel violated Linder's rights under the Sixth and Fourteenth Amendments by failing to provide effective assistance.

---

[3]      The jury also found Linder guilty of the one-year firearm specifications attached to the attempted murder and kidnapping convictions, but those findings merged by operation of law into the corresponding three-year specification on each charge. Doc. 10-1, at 47 (Ex. 11).

II. The trial court violated Linder's right to counsel and against self-incrimination by denying Linder's motion to suppress his statement to Detective Reese.

III. The trial court violated Linder's constitutional rights by denying Linder's motion for judgment of acquittal under Crim.R. 29 despite a lack of sufficient evidence presented by the state to establish, beyond a reasonable doubt, all necessary elements to support conviction on the charges.

IV. Linder's convictions are against the manifest weight of the evidence.

V. The trial court erred and violated Linder's constitutional protection from double jeopardy as well as his due process rights by imposing separate sentences on the attempted murder and kidnapping convictions, which should have been merged as allied offenses of similar import.

VI. The trial court violated Linder's due process rights by violating his right to a speedy trial and, as a result, Linder's conviction should be vacated and his case should be dismissed.

Doc. 10-1, at 62 (Ex. 13). In September 2018, the Ohio court of appeals affirmed the trial court's judgment and sentence. Doc. 10-1, at 130–162 (Ex. 15).

In February 2019, Linder sought leave to file a delayed appeal, Doc 10-1, at 166–168 (Ex. 17), which the Ohio Supreme Court granted in April 2019. Doc. 10-1, at 208 (Ex. 18). In May 2019, Attorney Pagano filed a memorandum in support of jurisdiction, Doc. 10-1, at 209–222, that asserted the following:

I. Linder's trial counsel provided ineffective assistance in violation of the Sixth and Fourteenth Amendment rights by 1.) failing to request bifurcation of the charges before the state introduced a prior conviction; 2.) failing to call witnesses on Linder's behalf; and 3.) failing to object when the state

elicited impermissible opinion testimony from a police officer.

II. The trial court violated Linder's Fifth and Sixth Amendment rights by denying the motion to suppress his pretrial statement.

III. The trial court violated Linder's constitutional rights by denying the Crim. R. 29 motion for judgment of acquittal, even though the state failed to present sufficient evidence to establish, beyond a reasonable doubt, all necessary elements to support conviction of each crime charged.

IV. The trial court violated Linder's constitutional protection from double jeopardy and right to due process by sentencing him separately on his convictions for attempted murder and kidnapping since they are allied offenses of similar import that should have been merged.

V. The trial court violated Linder's due process rights and his right to a speedy trial, so his conviction should be vacated and the case should be dismissed.

Doc. 10-1, at 221 (Ex. 19).

In July 2019, citing Ohio Supreme Court Rule of Practice 7.08(B)(4), the Ohio Supreme Court declined to accept jurisdiction of Linder's appeal. Doc. 10-1, at 225 (Ex. 21).

*Federal habeas proceedings*

In July 2020, Linder filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 and raised the following grounds for relief:

**Ground one**: Linder's rights under the Sixth and Fourteenth Amendments were violated by the ineffective assistance of trial counsel, who failed 1.) to move to bifurcate the charge of having a weapon while under disability from Linder's other charges;

11

2.) to object when the state elicited impermissible opinion testimony as to whether Linder was under the influence of PCP during his pretrial statement to Detective Reese; and 3.) to object when Detective Reese testified about his ability to tell when someone is lying to him.

**Ground two**: Linder's Fifth and Sixth Amendment rights were violated when the trial court denied his motion to suppress the pretrial, involuntary statements Linder made to Detective Reese.

**Ground three**: Linder's due process rights were violated when the trial court denied his Crim.R. 29 motion even though the state's evidence was insufficient to support convictions for attempted murder with firearms specifications, felonious assault with firearms specifications, and having weapons while under disability.

**Ground four**: Linder's due process rights were violated when the trial court imposed separate sentences on the attempted murder and kidnapping convictions; since the same conduct can be construed to constitute both offenses, they should have been merged as allied offenses of similar import.

Doc. 1, at 4–15. Respondent Warden Edward Sheldon filed a return of writ in response. Doc. 10. Linder filed a traverse. Doc. 14.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 ("AEDPA"), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to

12

review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the

13

factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g., Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

*Procedural default*

Procedural default may occur in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit provided four prongs of analysis to be used when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds

14

for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review. *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and establish actual prejudice resulted from the alleged violation of federal law, or show that a fundamental miscarriage of justice will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits Review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court (the "contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of

the facts in light of the evidence presented in the state court proceedings (the "unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, the habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000). Under the *unreasonable application* clause, the habeas court may grant a writ "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "Clearly established federal law" refers to the holdings, not dicta, of Supreme Court decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id.* at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed a petitioner's specific claims, the reviewing district court cannot find that the state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state

court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

When evaluating a state court's decision under the *unreasonable application* clause, the federal court must use an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

## Discussion

As a threshold matter, Linder presented each of his arguments to the state courts before raising them in his habeas petition. So this Court can proceed to review the merits of Linder's claims. 28 U.S.C. § 2254(b)(1)(A).

*Ground one fails on the merits.*

In ground one, Linder argues that trial counsel provided ineffective assistance in violation of his Sixth and Fourteenth Amendment rights. Doc. 1, at 4. A successful ineffective-assistance claim requires a petitioner to

demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong is satisfied when a petitioner "show[s] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The second prong is satisfied when the petitioner "show[s] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694). The combined effect of *Strickland* and 28 U.S.C. § 2254(d) is "'doubly deferential'" review. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). "When 2254(d) applies, the question is not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105; *Foust v. Houk*, 655 F.3d 524, 533–34 (6th Cir. 2011).

*Strickland* commands that a court "must indulge [the] strong presumption" that counsel "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689–690; *Pinholster,* 563 U.S. at 196 ("[t]he Court of Appeals was required not simply to 'give [the] attorneys the benefit of the doubt,' but to affirmatively entertain the

18

range of possible 'reasons Pinholster's counsel may have had for proceeding as they did'") (citation omitted).

Here, Linder's claim is divided in two parts. The first part concerns counsel's failure to move to bifurcate the charge of having weapons while under disability from his other charges. Doc. 1, at 4. The argument is that since a prior conviction was a necessary element of the charge of having weapons while under disability, bifurcating this charge from Linder's other charges before the state presented evidence of his prior conviction would have prevented prejudicing the jury against Linder. On this point, the Ohio court of appeals said:

> Upon review, we do not find merit to Linder's ineffective assistance of counsel claim on this ground. Because Linder testified at trial, he opened the door to the jury learning about his criminal record. Moreover, even had he not testified, based on the other evidence presented against him, we do not find that the outcome of the trial would have been different.

*State v. Linder*, 2018-Ohio-3951, at *6, ¶ 40.

In its analysis, the court addressed the *Strickland* standard and applied relevant state law in support of its conclusion, writing that:

> The Ohio Supreme Court has repeated the well-established standard for reviewing claims of ineffective assistance of counsel: Reversal of convictions for ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland v. Washington* (1984), 466 U.S. 668, 687. *State v. Hanna*, 95 Ohio St.3d 285, ¶ 109.

Counsel's performance may be found to be deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also, State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. To prove that counsel's deficient performance prejudiced the defense, a defendant must establish that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at *id.*; *Bradley* at paragraph three of the syllabus.

Moreover, when a reviewing court considers an ineffective assistance of counsel claim, the reviewing court should not consider what, in hindsight, may have been a more appropriate course of action. *See State v. Phillips*, 74 Ohio St.3d 72, 85 (1995). Rather, the reviewing court "must be highly deferential." *Strickland* 466 U.S. at 689. As the *Strickland* court stated, a reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955).

*State v. Linder*, 2018-Ohio-3951, at *5, ¶ 35–37 (duplicate citations omitted).

Linder doesn't attempt to show how the state court's decision is contrary to clearly established United States Supreme Court precedent. And the Ohio court of appeals found that because Linder testified, a decision he does not claim resulted from ineffective assistance, he suffered no prejudice because his prior conviction would have come out anyway.

If there was no prejudice, a habeas court need not determine whether counsel's performance was deficient. *Strickland*, 466 U.S. at 697. And the test for the prejudice prong under *Strickland* is whether counsel's errors have likely undermined the reliability of, or confidence in, the result. *West v. Seabold*, 73

F.2d 81, 84 (6th Cir.1986) (citing *Lockhart v. Fretwell*, 506 U.S. 364 (1993)). Linder does not meet this standard. Indeed, he doesn't attempt to meet it and doesn't claim that there is any basis to question the state court's prejudice determination.

The second part of Linder's ineffective-assistance-of-counsel claim concerns his trial attorney's decision, on two occasions, not to object to the testimony of Detective Reese. I will address each instance separately. The first was when Detective Reese testified that he "had the ability to tell when someone was lying." Doc. 1, at 4. But the state court held that, "Reese did not state his opinion or belief as to the veracity of any witness in this case." This is a factual finding to which a habeas court is bound to defer, absent a showing, which isn't made here, that the "decision … was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). So this aspect of Linder's claim fails.

The second instance where Linder claims that trial counsel's decision not to object demonstrates ineffective assistance of counsel was when Detective Reese testified that he didn't smell PCP on Linder during their conversation at the police station on March 29, 2017. Doc. 1, at 4. The Ohio court of appeals rejected this argument based on state-law principles about proper rebuttal evidence. *State v. Linder*, 2018-Ohio-3951, at *7, ¶ 50 ("the testimony that Linder complains of was proper rebuttal testimony, presented by the state to rebut Linder's testimony that Detective Reese smelled PCP on him"). So this

21

aspect of the issue is not cognizable. *See Pulley v. Harris*, 465 U.S. 37, 41 (1984) (a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."); *see also Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (it is "not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

Moreover and in any event, the Ohio court of appeals did not unreasonably apply the facts when it determined that Detective Reese simply testified to rebut Linder's testimony. Linder testified that Detective Reese smelled PCP on Linder. *State v. Linder*, 2018-Ohio-3951, at *7, ¶ 46. The detective testified on rebuttal that he didn't. *Id.*, at *7, ¶ 47. Linder does not explain what, as a constitutional matter, is wrong with this sort of testimony.

*Ground Two fails on the merits.*

In ground two, Linder argues that the trial court violated his constitutional rights when it denied his motion to suppress the statements he made to Detective Reese on March 29, 2017. Doc. 1, at 6. Linder argues that his statements were not voluntary because he was allegedly under the influence of PCP at the time. Doc. 1, at 6. This ground fails for two reasons.

First, the Ohio court of appeals wrote that, "the trial court reviewed the videotape of the interview, considered it along with Detective Reese's testimony, and concluded that Linder was not under the influence. Our review of the videotape and suppression testimony supports that same conclusion." *State v. Linder*, 2018-Ohio-3951, at *8, ¶ 59. A state court's factual

determination is presumed correct. 28 U.S.C. § 2254(e)(1). Here, Linder has done nothing to carry his burden to rebut this presumption. Nor has he shown that the state court unreasonably applied the facts.

Second, as Respondent notes, Linder does not argue that he was not advised of his *Miranda* rights, does not argue that he was coerced, and does not argue that he told Detective Reese or any other officer that he was under the influence of PCP. Doc. 10 at 12. Absent police coercion, which Linder has not shown or claimed here, even if he were under the influence of PCP or any other controlled substance when he was questioned by Detective Reese, that fact would not matter. *See United States v. Prigmore*, 15 F.4th 768, 779 (6th Cir. 2021); *Clark v. Mitchell*, 425 F.3d 270, 283 (6th Cir. 2005).

*Ground three fails on the merits.*

In ground three, Linder argues that his rights were violated because he was convicted of attempted murder, kidnapping, and having weapons while under disability despite the state's failure to present sufficient evidence, proven beyond a reasonable doubt, to support all necessary elements of each of those crimes. Doc. 1, at 7. Sufficiency-of-the-evidence claims face a high hurdle. When considering a sufficiency-of-the-evidence claims, this Court gives two layers of deference, one to the trier of fact and one to the state appellate court that considered the sufficiency challenge on appeal. *See Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020).

First, on direct appeal, a reviewing court must view the evidence "in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979), and may only reverse "if no rational trier of fact could have agreed with the jury, *Tackett*, 956 F.3d at 367 (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (*per curiam*)). A reviewing court cannot "reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the jury." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The Court "must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution." *Id.*   Further, Linder must show that the court of appeals' decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Coleman*, 566 U.S. at 651.

But Linder doesn't try to shoulder this burden. So his claim fails. And even if he had, the Ohio court of appeals didn't unreasonably apply the facts. The Ohio court of appeals addressed this issue:

> Linder contends that the following renders the convictions against the weight of the evidence: (1) lack of testing of the blood swabs to "eliminate any confusion"; (2) Montanez's "nonsensical" testimony; (3) Stone's (Linder's ex-girlfriend) lack of credibility; and (4) Detective Reese's "sloppy" investigation.
>
> After having considered Linder's claims, we do not find that the result in this case represents a manifest miscarriage of justice, such that a new trial must be ordered. Most of Linder's claims about the weight of the evidence go to the credibility of the

24

witnesses, which the jury was in the best position to determine. The jury likewise was best able to consider and weigh the investigation that was conducted in this case — we find there was nothing incredible about it. For example, Detective Reese testified that he did not feel the need to test the blood found in Caryle's apartment to determine whether it was blood from Caryle's mother or Luckey because the alleged incident involving the mother occurred in a different location altogether.

Several witnesses at trial identified Linder as the perpetrator of the crimes committed against Luckey. Her injuries as a result of the assault were severe— Luckey, her mother, and the treating emergency room physician testified about them. Further, Linder twice confessed to the crimes—once to Stone (his ex-girlfriend) and once to Detective Reese.

*State v. Linder*, 2018-Ohio-3951, at *9, ¶ 67–69.

Resolving all disputes in favor of the prosecution, a rational trier of fact could have found Linder guilty based on the facts presented at trial. The court referenced the severe injuries Luckey suffered because of Linder's actions against her. *State v. Linder*, 2018-Ohio-3951, at *9, ¶ 69. Luckey testified that Linder had attacked her, first repeatedly punching her in the head then beating her with a pistol until she fell unconscious. *Id.*, at *2, ¶ 13. Building resident Mariah Montanez testified that she saw Linder shaking a woman that night outside Caryle's apartment then watched him drop the woman from the second floor to the first floor, headfirst. *Id.*, at *2, ¶ 14. The evidence established life-threatening injuries to Luckey, who required immediate resuscitation at the hospital, where she was put on a ventilator and placed in

a medically induced coma. *Id.*, at *3, ¶ 16. She had to re-learn how to walk and talk, and the incident negatively affected her mental health. *Id.*, at *3, ¶ 17.

Reluctant witness Tanisha Stone, Linder's ex-girlfriend and the mother of two of his children, testified that after the incident, Linder said he "did something bad." *Id.*, at *3, ¶ 18. She said Linder told her that he, Luckey, and Caryle had been getting high and that he thought Luckey had taken his money when he fell asleep so he hit her, dragged her down the stairs, and "shot off a gun." *Id*. Even this brief and non-exhaustive recitation of the facts provides a sufficient basis, especially when considered in the light most favorable to the prosecution, for the Ohio court of appeals to uphold the verdict in this case.

And it was not unreasonable for the Ohio court of appeals to find that Linder was not convicted against the weight of the evidence. He asserted that the lack of testing conducted on blood swabs that were collected from Caryle's apartment was one reason that he was convicted against the weight of the evidence. *Id.*, at *9, ¶ 67. As the Ohio court of appeals noted, however, Detective Reese explained that he did not believe testing was necessary on those swabs because his investigation demonstrated that Linder was the perpetrator. *Id.*, at *3, ¶ 22. It is also worth noting that whether the blood found in Caryle's apartment was or wasn't Luckey's blood is of minimal import here. There was no evidence calling into question whether Luckey was assaulted in Caryle's apartment, an issue that would have been addressed by the testing of the swabs. The issue was not whether and where Luckey was

assaulted but by whom. *Id.*, at *3, ¶ 21, 26, 28. So it was not unreasonable for the Ohio court of appeals to determine that the untested swabs did not render Linder's convictions against the weight of the evidence.

In addressing Linder's other sufficiency-of-evidence arguments, the Ohio court of appeals found that the jury was in the best position to determine Tanisha Stone's credibility, Detective Reese's meticulousness, and the extent to which Mariah Montanez's testimony made sense. The Sixth Circuit has long held that issues of witness credibility are "strictly for the jury to determine." *United States v. Evans*, 883 F.2d 496, 501 (6th Cir. 1989) (citing *United States v. Schultz*, 855 F.2d 1217, 1221 (6th Cir. 1988)). Finding that Linder's convictions are not contrary to the weight of the evidence, the Ohio court of appeals noted the nature and severity of Luckey's injuries, the multiple witnesses who identified Linder as the person who assaulted Luckey, and Linder's inculpatory statements to Tanisha Stone and Detective Reese. The Ohio court of appeals didn't unreasonably apply the facts, especially when those facts are viewed in a light most favorable to the prosecution. Linder has done nothing to show otherwise. His third claim fails.

*Ground four fails on the merits.*

In ground four, Linder argues that the trial court violated his constitutional rights when it declined to merge his attempted murder and kidnapping convictions as allied offenses of similar import and sentenced him

on them separately. Doc. 1, at 9. As a factual matter, however, the state court held that:

> the record demonstrates that the initial assault of Luckey in the apartment was distinct from his kidnapping of her, that is, his purposeful removal of her, by force, from the place where she was found (inside the apartment) for the purpose of terrorizing or inflicting serious physical harm upon her.

*State v. Linder*, 2018-Ohio-3951, at *10, ¶77. Linder does not claim that this factual determination is mistaken, let alone that it's unreasonable. He also does not attempt to rebut the presumption that the factual finding is correct. So, as a factual matter, the counts at issue were directed at distinct events.

Contrary to Linder's argument, therefore, this is not a case in which "the same act or transaction constitutes a violation of two distinct statutory provisions." *Volpe v. Trim*, 708 F.3d 688, 696–97 (6th Cir. 2013), *as amended on denial of reh'g* (Jan. 31, 2013). It's instead a case in which two separate acts violate two separate statutes. Under the state court's factual determination, merger analysis does not apply. And Linder's fourth claim fails.

## Conclusion

For all the reasons set forth above, I recommend that Linder's petition be denied.

Dated: February 13, 2023

                           */s/ James E. Grimes Jr.*
                           James E. Grimes Jr.
                           U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).